# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-705

ROXANE MONTGOMERY

VERSUS

C & C SELF ENTERPRISES, INC.

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2003-1726
HONORABLE WILFORD D. CARTER, DISTRICT JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Oswald A. Decuir, Marc T. Amy, Billy Howard Ezell, and J. David Painter, Judges.

**REVERSED AND RENDERED.**

**Thibodeaux, Chief Judge, dissents and assigns reasons.**


John S. Bradford
Stockwell, Sievert, Viccellio, Clements & Shaddock
Post Office Box 2900
Lake Charles, LA   70602
(337) 436-9491
COUNSEL FOR PLAINTIFF/APPELLEE:
    Roxane Montgomery

Tracy P. Curtis
Jones, Walker, Waechter, Poitevent,
Carrere & Denegre, L.L.P.
Post Office Drawer  3408
Lafayette, LA   70502-3408
(337) 262-9000
COUNSEL FOR DEFENDANT/APPELLANT:
    C & C Self Enterprises, Inc.

AMY, Judge.

The plaintiff filed suit against the defendant asserting that the defendant impermissibly terminated her employment based upon her age. The trial court found in favor of the plaintiff. The defendant appeals. For the following reasons, we reverse and render judgment in favor of the defendant.

**Factual and Procedural Background**

The defendant, C&C Self Enterprises, Inc., owns and operates several video rental stores in Louisiana. In October of 2001, the defendant hired the plaintiff, Roxane Montgomery, as assistant manager for one of their Lake Charles stores. The plaintiff was forty-one years old at the time she was hired. Five months after beginning her employment, on April 8, 2002, the defendant terminated the plaintiff's employment.

The plaintiff filed a petition, alleging that the defendant terminated her employment because of her age in violation of Louisiana's Age Discrimination Employment Act (LADEA), La.R.S. 23:301, *et seq.* The petition further alleged that the plaintiff suffered severe emotional distress resulting in physical complications due to her wrongful termination. The defendant answered, asserting that the plaintiff was not discharged due to her age, but for inadequate job performance. Following the filing of its answer, the defendant filed a Motion for Summary Judgment seeking dismissal of the plaintiff's claims. The trial court denied the motion.

Following a trial, the trial court found in favor of the plaintiff and awarded her $36,000.00 in lost wages and $14,000.00 in mental anguish.

The defendant appeals, asserting that the trial court erred in: (1) not granting the motion for summary judgment as the plaintiff failed to establish a prima facie case of age discrimination; (2) not granting the motion for summary judgment as the

plaintiff failed to put forward evidence rebutting each of the defendant's proffered non-discriminatory reasons for termination; (3) ruling in the plaintiff's favor based upon a finding of "pretext" without evidence of an intentional act as required by law; and (4) assessing $50,000.00 in damages.

**Discussion**

*LADEA*

The LADEA provides, in pertinent part, that it is unlawful for an employer to "[f]ail or refuse to hire, or to discharge, any individual or otherwise discriminate against any individual with respect to his compensation, or his terms, conditions, or privileges of employment because of the individual's age." La.R.S. 23:312(A)(1). Because Louisiana's age discrimination statute is nearly identical to the federal statute prohibiting age discrimination, Louisiana courts have traditionally used federal case law for guidance.[1] *LaBove v. Raftery*, 00-1394 (La. 11/28/01), 802 So.2d 566.

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973), the Supreme Court set forth the basic allocation of burdens and order of presentation of proof in an employment discrimination case. First, the plaintiff must bear the initial burden of establishing a prima facie case of discrimination. *Id.* In order to prove a prima facie case of age discrimination, the plaintiff must show that: (1) she is in the protected age group between the ages of forty and seventy years; (2) her employment with the defendant was involuntarily terminated; and (3) she was qualified to perform the job she was employed to perform. *Taylor v. Oakbourne Country Club*, 02-1177 (La.App. 3 Cir. 5/14/03), 846 So.2d 959, *writ denied*, 03-2025 (La. 11/7/03), 857

---

[1] The federal Age Discrimination in Employment Act (ADEA) is found at 29 U.S.C. § 621, *et seq.*.

2

So.2d 494; *See also*, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742 (1993); *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089 (1981); and *McDonnell*, 411 U.S. 792, 93 S.Ct. 1817. Establishing a prima facie case in effect creates a presumption that the defendant unlawfully discriminated against the plaintiff. *Hicks*, 509 U.S. 502, 113 S.Ct. 2742.

If the plaintiff succeeds in establishing a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its conduct. *Reeves*, 530 U.S. 133, 120 S.Ct. 2097. This burden on the defendant, is one of production, not persuasion. *Id.* If the defendant provides such reasons, the plaintiff will then have an opportunity to prove, by preponderance of the evidence, that the defendant's proffered reasons were merely pretext, or in other words, not the true reason for the alleged discrimination. *Id.* At this point,

> when all of the evidence has been presented, the overall evidence ultimately must be sufficient for the jury to conclude that age discrimination was the true reason for the employment decision. To prevail in a disparate treatment case, a plaintiff must show that the protected trait (under the ADEA, age) actually motivated the employer's decision. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). Thus, age must actually have played a role in the employer's decision making process and had a determinative influence on the outcome. *Id.*

*LaBove*, 802 So.2d at 574.

In the defendant's first two assignments of error it argues that the court improperly dismissed its Motion for Summary Judgment because the plaintiff failed to prove a prima facie case of discrimination and failed to rebut each of its proffered legitimate, non-discriminatory reasons for termination. "However, because this case has been fully tried on the merits, we 'need not address the sufficiency of the

3

[plaintiffs'] prima facie case, and may instead proceed directly to the ultimate question of whether [plaintiffs] have produced sufficient evidence for the [factfinder] to find that discrimination has occurred.'" *Wyvil v. United Cos. Life Ins. Co.*, 212 F.3d 296, 301 (5th Cir. 2000)( quoting *Atkin v. Lincoln Prop. Co.*, 991 F.2d 268, 271 (5th Cir. 1993)).

On review, an appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). "[T]he issue to be resolved by the reviewing court is not whether the factfinder was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Hanks v. Entergy Corp.*, 06-477, p. 23 (La. 12/18/06), 944 So.2d 564, 580. If the findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id.*

> However, where documents and objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the reviewing court may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. *Id.*

*Id.*

*Defendant's Proffered Legitimate Non-Discriminatory Reasons*

The defendant contends that the plaintiff was fired because of unsatisfactory job performance, not because of her age. At trial, Tom Pate, the defendant's Director of Store Operations and the plaintiff's supervisor, and T. Claiborne Self, the owner and president of the defendant company, testified about the events leading up to the plaintiff's termination. Mr. Self testified that a few days prior to the plaintiff's termination, he made a visit to the store where the plaintiff was the assistant manager.

He related that as the plaintiff was showing him the store he got a "very, very strong sense that there was very little control of the organization within the store." He testified that he observed merchandise out of order, un-vacuumed floors, boxes laid on the floor, movies stacked on the counter, and employees wandering around without direction. Mr. Self further stated that when he left the store to visit another store across town, he saw the plaintiff smoking outside the store. He related that after visiting the other store, about forty-five minutes after leaving the plaintiff's store, he returned to the plaintiff's store and again observed her outside of the store smoking. He testified that he then called Mr. Pate and "told him that he had a serious problem, that he had a store that was out of control and that he had a manager on duty sitting in front of the store smoking, also, for an extended period of time after my visit and it looked really bad and the store looked really bad."

Mr. Pate testified that he decided to fire the plaintiff after the discussion he had with Mr. Self. He related that he called the plaintiff and explained to her that her employment was terminated because "the service level was not what it needed to be." Mr. Pate testified that Mr. Self did not explicitly tell him to fire the plaintiff, rather "He told me, 'Hey, this is your issue. This person is doing this. You're going to need to fix this or correct it.' And it's my burden." Mr. Pate denied that he terminated the plaintiff because of her age.

The defendant offered into evidence the plaintiff's January 2002 performance evaluation. That evaluation contained "needs improvement" notations under: store appearance including outside entrance, counter areas, and parking lot; maintaining customer service; and inventory. Under the "Additional Comments" section it stated,

5

in part, that the plaintiff needed to "improve communication," "ask more questions of things she is not sure about," and "work on overall customer service."

*Pretext for Intentional Discrimination Submitted by Plaintiff*

The plaintiff asserts that the defendant's proffered non-discriminatory reasons were merely pretextual for a number of reasons. The plaintiff points to an "Exit Form" completed by Mr. Pate at her termination. The form included a section titled "Reason for Dismissal" which included several options including: Unsatisfactory Performance, Unacceptable Attitude, Unacceptable Conduct, Violated Company Policy, and Other. On the plaintiff's form, the box titled "Other" was checked. Under the "Explanation of Departure" section, Mr. Pate wrote "Roxanne is released due to a desired change of direction for this store. I am making personnel changes in an attempt to improve the service level and visit patterns by customers at this store." The plaintiff asserts, in brief, that the proffered reason, unsatisfactory job performance, is pretext because "notably absent from that form was indication that [she] had been derelict in her duties[.]"

Further, the plaintiff notes that in the January 2002 performance evaluation entered into evidence by the defendant while containing "needs improvement" notations does not contain any "unsatisfactory" marks. She testified at trial her manager at the time, Ray DeLeon, related to her that the reason her evaluation contained "needs improvement" notations was due only to the fact that he was required to find something that she could improve upon and that he could not let any employee be "perfect."

At trial, the plaintiff offered contradictory testimony in regard to Mr. Self's store visit. The plaintiff testified that she was not outside the store smoking for an

6

extended period of time. She explained that when she did take a smoke break at work, it was never for more than ten or fifteen minutes and never in the spot Mr. Self identified he allegedly saw her smoking. She further testified that there was another employee who looked similar to her who often took smoke breaks in the location where Mr. Self testified he saw the plaintiff smoking. Secondly, the plaintiff contradicts that the store was in the unacceptable state as described by Mr. Self. She contends that she was never advised that the store was in an unsatisfactory condition and was never disciplined for any of the alleged conditions that existed at the store on the day of Mr. Self's visit.

In addition to asserting that the defendant's proffered reasons were pretextual, the plaintiff relies on several events she contends proves the defendant committed age discrimination. She testified that on the day of Mr. Self's visit, she told him that she was forty-one-years old, he reacted adversely, and within days she was terminated. She testified to that event as follows:

> . . . . I was very happy to be at that store and that I was excited about what we could do with it. And that I made this statement to him that I'm 41 years old, I want something long term. This seems to be what I'm interested in and I enjoy. And I really hope that I will be able to stay here and work with [the defendant].
>
> Q     When you - - when you had that portion of your conversation, was there anything changing about your conversation with him?
>
> A     Mr. Self was very evasive after that. He didn't really converse with me. He looked to the right, then he kind of looked out to the - - to the glass windows at the left, and kind of took a few steps forward and he left the store.

Mr. Self denies that this conversation took place and asserts that he did not know the plaintiff's age until he was served with the present suit.

The plaintiff also points to two separate events she contends demonstrate a pattern of age discrimination on the part of the defendant. She asserts that, in testimony, Mr. Self was unable to identify any employee in the Lake Charles area over forty. She further testified that she witnessed her manager, Mr. DeLeon, throw away applications submitted by two women she approximated were in their late thirties. In brief, she asserts that these women were in the protected class, however, as stated above, the protected class includes persons over the age of forty. *See Taylor*, 846 So.2d 959.

In its oral reasons for judgment, the trial court stated as follows:

> This case, on the onset, it's complicated to the Court because initially Ms. Montgomery was hired by the Defendant when she was 41 years old. Her employment with [the defendant] lasted about five months; terminated when she was 42. Initially, on the surface, it doesn't seem that [the defendant] had a policy in place not to hire people over 40, while the testimony has been that the age was not a concern of management. But we do know that her resume' is attached to an application that is found in the exhibits of the personnel record, I think. I don't know what exhibit that is. That's the Defendant's exhibit, multiple exhibit. She's got her age on it. She said she mentioned her age to the folks that interviewed her, Mr. Pate, I think, or Mr. Delahoussaye, interviewed her, and she was subsequently hired in October, 2001, at the age of 41.

> She worked at a location in Lake Charles until December. She was transferred, I think she said, to the Ryan Street Store.

> I did go over the evaluation that she had on January 31. It seemed to be a satisfactory evaluation for the most part, except for one area, the behavior pattern, something about her not sharing with management her ideas or concerns, not speaking up. Communicating with management seemed to be a problem there; but otherwise, she had a satisfactory evaluation on January 31st.

> Mr. Pate testified that she was performing satisfactorily because he promoted her sometime a week before her termination in April - - April the 7th or 8th, 2002 - - April the 8th, 2002. He said he fired her because she - - it was reported to him by Mr. Self, the owner, the primary owner of the [defendant company], that he saw her smoking for

8

an hour outside of the store on one day late in March, about a week before she was fired.

It is clear that Ms. Montgomery meets the criteria of the affected class to this statute, i.e., she is over 40 at the time of her termination.

It's also clear that while Mr. Self noticed some inadequacies in the store operation and was quite concerned about it, and also he noticed that she had been smoking outside of the store, and this is contradictory evidence because Ms. Montgomery said that she did take a brief smoke break but not in front of the store. She went down the street somewhere and smoked with some friends. And that another lady - - he might have confused her with another blonde headed lady employee, that was at the store that sometimes smokes in front of the store. So that wasn't too clear, whether, she was, in fact, smoking for an hour. But I don't quite know why she was fired; however, it is clear that she was the only one fired and/or disciplined. There were other people working at the store, a Mr. O'Blanc (spelled phonetically) had spent time a week prior to her firing - - Ms. Montgomery's firing, in the store, helping out. And there were other people, according to Mr. Self, that were sent in there - we don't know who those people were - as helping out, managers from other places.

Ms. Montgomery worked the day shift as an assistant manager, or the manager on duty, apparently, and she was the only one disciplined; she was the only one fired, and she's 40 years old.

So, with those facts, I think she presented a prima facie case that she may have been the victim of a termination because of her age.

And we look at what is the law in situations such as this, and I did look at a few cases presented by the parties. This Third Circuit Case, *Taylor vs. Oakbourne Country Club*. That is where there was a genuine issue of material fact remaining in the case, it has to do with the involuntarily discharged [sic] due to age discrimination. I don't think that case is much like this case, has much to offer us.

However, the case of - - the Supreme Court case is the one I'm interested in: *Reeves v. Sanderson Plumbing Products*, the United States Supreme Court says - - the Supreme Court O'Connor writing held that: prima facie case and sufficient evidence of pretext may permit the trier of fact to find unlawful discrimination, without additional, independent evidence of discrimination, though such showing would not always be adequately sustained - - no such showing would not be adequate to sustain jury's finding of liability.

Well, I think that [the defendant] has been false - - made false statements as to why they terminated Ms. Montgomery. One point, Mr. Pate said he terminated her because she was - - it was reported that she was smoking for an hour in front of the store. They put it in the answer as well as on the exit form, that she was terminated because they wanted to go in a different direction, take the store in a different direction with regard to the service level, and visit patterns of customers. They also - - and I noticed they respond to the Unemployment Office, it was a re-organization of the store. So, I don't know if anybody was - - everybody was - - the store was staffed the same after she left as it was before she left, and is the staff any different at any other store. But that's obviously not the reason why she was terminated. And I don't believe she was terminated because she was smoking in front of the store. I don't even know if she was smoking in front of the store for an hour. But there was no investigation done. And it could have easily been verified if she would - - if Mr. Self would have gone and spoke to her when he saw her standing when he came back the second time. It seemed like he was really concerned about the operation of the store, but the problem is, nobody else was disciplined. And I think under the Supreme Court case I cited, that was at - - that case is cited at 120 S.Ct. 2097.

So, as I understand it, if I find a prima facie case of unemployment; if I find that the employer was not truthful in the reason for termination, which I do in this case. I don't think they gave me a good reason or a truthful reason for terminating Ms. Montgomery. And besides the fact she was the only person terminated or even disciplined.

So I find for the Plaintiff, that she was terminated because of violation of the termination - - the law under 23:311 et seq.

*Discrimination Vel Non*

The defendant argues that the trial court erred in ruling in the plaintiff's favor based upon a finding of "pretext" without evidence of an intentional act as required by law. Specifically, the defendant argues that while the trial court found that the defendant's reasons for why it fired the plaintiff were false, it did not find that the defendant acted with discriminatory animus, thus, it was error for the trial court to find in the plaintiff's favor.

In *Reeves*, 530 U.S. 133, 120 S.Ct. 2097, the Supreme Court dealt with the question of what kind and the amount of evidence that is necessary to affirm a finding

that an employer unlawfully discriminated on the basis of age. As noted in the trial court's oral reasons for judgment, the *Reeves* court did state that it would be "*permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Id* at 147; 2108. However, the *Reeves* court also explained that "[t]his is not to say that such a showing by the plaintiff will *always* be adequate to sustain a [factfinder's] finding of liability." *Id.* at 148; 2109. The plaintiff always bears the ultimate burden of proving to the trial court that his or her evidence establishes intentional discrimination; it is not enough that the trial court simply disbelieves the employer's proffered reasons. *See LaBove*, 802 So.2d 566; *Reeves*, 530 U.S. 133, 120 S.Ct. 2097; *Hicks*, 509 U.S. 502, 113 S.Ct. 2742. The plaintiff must establish, by preponderance of the evidence that age was the "but for" reason the employer terminated the plaintiff, as opposed to merely a motivating factor. *Eastin v. Entergy Corp.*, 09-293 (La.App. 5 Cir. 7/27/10), 42 So.3d 1163. *See also Gross v. FBL Fin. Servs. Inc.*, __ U.S. ___, 129 S.Ct. 2343 (2009).

After review of the record and the trial court's reasons for judgment, we find merit in the defendant's assignment of error that the trial court erred in ruling in favor of the plaintiff without finding the defendant acted with discriminatory animus. We find that the record does not permit a reasonable factfinder to conclude that the plaintiff proved the defendant terminated her employment because of her age.

A review of the trial court's judgment reveals that the trial court incorrectly placed a burden on the defendant to prove that its proffered reasons were both truthful and valid. In its oral reasons for judgment, the trial court stated "I don't think they [the defendant] gave me a *good reason* or a *truthful reason* for terminating Ms. Montgomery. And besides the fact she was the only person terminated or even

disciplined." (Emphasis added.) Also, it stated, "But I *don't quite know why she was fired*; however, it is clear that she was the only one fired and/or disciplined." (Emphasis added.)

Because an "employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish" that the plaintiff's assertion of age discrimination is correct. *Hicks*, 509 U.S. at 524, 113 S.Ct. at 2756. "The ADEA was not ... intended to transform the courts into personnel managers. The ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated." *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507-08 (5th Cir.1988)(internal citations omitted). Thus, it is not enough to *disbelieve* the employer, the factfinder must *believe* the plaintiff has proven its explanation of intentional discrimination. *Hicks*, 509 U.S. 502, 113 S.Ct. 2742.

The plaintiff relies on her testimony of several encounters with employees of the defendant store to prove discriminatory animus. However, "an employees' subjective belief of discrimination, however genuine, cannot be the basis of judicial relief." *E.E.O.C. v. Louisiana Office of Cmty. Servs.*, 47 F.3d 1438, 1448 (5th Cir. 1995). The plaintiff's belief that Mr. Self made an "adverse face" when he learned her age is vague and subjective and, alone, insufficient to prove the defendant acted with discriminatory animus in terminating her employment. *See Eastin*, 42 So.3d 1163. Further, even if we took the plaintiff's allegation against Mr. Self as fact, it lacks probative value of discriminatory animus as Mr. Self was not the person who made the decision to terminate her employment. Further, her assertions that the defendant demonstrated a pattern of age discrimination in reliance on Mr. Self's

testimony wherein he was unable to identify any employee in the Lake Charles area over forty and her alleged observation that a manager threw away applications when they were submitted by the "protected class" are also not sufficient to prove discriminatory animus.

In assessing whether the record supports a finding that the plaintiff carried her burden of proof, we point out that the plaintiff was hired and fired by the same person, Mr. Pate, who is also a member of the protected class as he testified to be over forty years old at the time of the plaintiff's termination. In *Proud v. Stone*, 945 F.2d 796, 797-98 (4th Cir. 1991)(emphasis added), the Fourth Circuit stated as follows:

> In assessing whether [the plaintiff] established that age was a motivating factor for his discharge, we focus on the undisputed fact that the individual who fired [the plaintiff] is the same individual who hired him less than six months earlier with full knowledge of his age. One is quickly drawn to the realization that [c]laims that employer animus exists in termination but not in hiring seem irrational. From the standpoint of the putative discriminator [i]t hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job. Donohue & Siegelman, *The Changing Nature of Employment Discrimination Litigation*, 43 Stan.L.Rev. 983, 1017 (1991). ***Therefore, in cases where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer***. While we can imagine egregious facts from which a discharge in this context could still be proven to have been discriminatory, it is likely that the compelling nature of the inference arising from facts such as these will make cases involving this situation amenable to resolution at an early stage. Here Klauss was responsible for the hiring and firing of Proud within a six-month time frame, and the evidence of his enumerated job deficiencies in a supervisory position makes any inference of discriminatory animus unwarranted.

We find nothing in the record to rebut this inference.

For the foregoing reasons, we find that the trial court's finding that the defendant discriminated against the plaintiff because of her age is unreasonable in

light of the record reviewed in its entirety. There was no sufficient showing that the plaintiff's age actually played a role or had a determinative influence in the defendant's decision to terminate the plaintiff's employment. Thus, we reverse the trial court's judgment in favor of the plaintiff and render judgment in favor of the defendant.

## DECREE

The judgment of the trial court in favor of the plaintiff is reversed, and judgment is rendered in favor of the defendant. All costs of this proceeding are assigned to the plaintiff-appellee, Roxane Montgomery.

**REVERSED AND RENDERED.**

ROXANE MONTGOMERY

VERSUS

C & C SELF ENTERPRISES, INC.


**THIBODEAUX, Chief Judge, dissenting.**

To reverse the trial court's judgment, this court must conclude: (1) that the record contains no reasonable factual basis for the trial court's finding; and, (2) that the record establishes trial court's finding clearly wrong. *Edwards v. Daugherty*, 98-635 (La.App. 3 Cir. 6/9/99), 736 So.2d 345, *writ denied*, 99-2034 (La. 9/17/99), 747 So.2d 568. Thus, even if the appellate court believes its own findings are more reasonable than those of the trial court, it should not substitute its judgment for that of the trier of fact unless it finds the trial court was clearly wrong. *Id.* Because questions of intent are based on credibility determinations, they are given particularly great deference on review as only the factfinder can perceive the variations in demeanor and tone of voice. *See Rosell v. ESCO*, 549 So.2d 840 (La.1989). Furthermore, "appellate courts review judgments, not reasons for judgment." *Bellard v. Am. Cent. Ins. Co.*, 07-1335, 07-1399 p. 25 (La. 4/18/08), 980 So.2d 654, 671 (citing La.Code Civ.P. art. 1918; *Burmaster v. Plaquemines Parish Government,* 07-1311 (La. 8/31/07), 963 So.2d 378).

Here, the majority correctly states the standard of review as manifest error. It explicitly states the burden C & C Self Enterprises, Inc. (C & C Self) needs

to overcome to prevail in this court, i.e., that the documents and the objective evidence must so contradict the witness's story or that the story must be so internally inconsistent or implausible on its face that no reasonable factfinder would credit the witness's story. Yet, the majority actually applies a different standard of review, i.e., sufficiency of evidence. Thus, the majority writes: "[t]here was no sufficient showing that the plaintiff's age actually played a role . . . ." Thus, the majority, instead of limiting its review to the issue of whether reasonable factual basis for the trial court's finding exist, assessed "whether the record supports a finding that the plaintiff carried her burden of proof." Whether the plaintiff carried her burden of proof is for the fact-finder to decide. This court decides whether that fact-finding was manifestly erroneous.

The majority never concludes that the objective evidence contradicts Ms. Montgomery's story. Neither does it find any inconsistencies in Ms. Montgomery's testimony. Nevertheless, the majority finds the trial court erred in its credibility determinations.

The majority's error lies in not reviewing the judgment as it must, but in reviewing reasons for judgment when it must not. Thus, it quotes two pages of the trial court's *reasons for judgment*. The majority erroneously conflates the two: "[a] review of the trial court's judgment reveals that the trial court incorrectly placed a burden on the defendant . . . ." In fact, the *judgment* makes no such revelation.

From the reasons for judgment, the majority surmises that while the trial court disbelieved the employer's explanation, it did not believe Ms. Montgomery's explanation of intentional discrimination. What the majority should have concluded from the *judgment* the trial court entered in favor of Ms. Montgomery is that she

2

proved all the elements of her claim, including the adequate explanation of intentional discrimination.

An appellate court must conduct a review of the record to determine whether it contains a reasonable factual basis for the trial court's finding. Here, that finding was that C & C Self's actions were unlawfully motivated. And, in fact, the record contains reasonable factual basis for the trial court's finding. The most important for the trial court was that there were other, younger employees, managers, who were responsible for the condition of the store. Yet, none of these younger people was fired or disciplined in any manner. Thus, the only person over the age of forty working for C & C Self in Lake Charles who was not even the manager of the store at the time of the store's allegedly unkempt condition, was disciplined, allegedly for that condition. This fact especially when juxtaposed with that only sixteen out of three hundred and seventy six C & C Self's employees are over the age of forty, provide a strong inference of invidious discrimination.

Other facts that provided reasonable basis for the trial court's conclusion include: Ms. Montgomery's satisfactory job reviews; that the reasons for her termination were devoid of any suggestion that she somehow failed to perform her job duties; that the manager threw in the trash, without consideration, resumes of older applicants; and that C & C Self's gave pretextual reasons for Ms. Montgomery's termination after the suit was filed. All of these are reasonably sound.

As the Supreme Court has instructed, it is permissible for the trial court to infer the fact of discrimination from the falsity of the employer's explanation. *Reeves*, 530 U.S. 133, 120 S.Ct. 2097. While the showing of pretext does not always carry the plaintiff's burden of proof, we are not dealing with the mere showing of pretext here. As the facts from the record listed above demonstrate, Ms. Montgomery

3

showed much more than the employer's falsity of explanation. Thus, based on those facts *and* the falsity of the employer's explanation, the trial court concluded that C & C Self's actions were unlawfully motivated. Therefore, the record contains a reasonable factual basis for the trial court's conclusion, and the record does not establish that the trial court's findings were clearly wrong.

Based on these considerations, I respectfully dissent.